IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DIANA FOWLER,
    Plaintiff,

vs.                                                                       Case No. 07-1270-JTM

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,
    Defendant.

MEMORANDUM AND ORDER

Plaintiff Diana Fowler filed the present action following a denial of her application for supplemental security income ("SSI"). For the following reasons, the court denies plaintiff's appeal.

Plaintiff originally filed an application for supplemental security income on September 17, 2004 (Tr. at 108), which was denied initially and upon reconsideration. (Tr. at 72; Tr. at 66; Tr. at 62). Plaintiff requested a hearing (Tr. at 61), after which the Administrative law judge ("ALJ") issued an unfavorable decision on February 20, 2007. (Tr. at 15-53). The Appeals Council denied review on August 3, 2007. (Tr. at 8-10).

Plaintiff now appeals, asserting four claims of error: 1) the ALJ's decision is not supported by substantial evidence; 2) the residual functional capacity ("RFC") was not based on substantial evidence; 3) the ALJ ignored the treating physician rule; and 4) the ALJ improperly ignored plaintiff's reports of pain. While plaintiff argues each of these claims, the focal point of plaintiff's concern is the ALJ's failure to find her migraine headaches to be a severe impairment.

This court's review is limited to determining whether, taking the record as a whole, substantial evidence supports the ALJ's decision and whether the ALJ applied the correct legal standards. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Reversal is appropriate if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1214.

Under 20 C.F.R. § 404.1512(a), plaintiff must demonstrate that she was unable to work because of a medically determinable impairment which lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404 1512(a). *See also Mathews v. Eldridge*, 424 U.S. 319, 336 (1976); *Barnhart v. Walton*, 535 U.S. 212 (2002) (upholding the Commissioner's interpretation of the statutory definition which requires that the disability, not only the impairment, must have existed or be expected to exist for 12 months). The Commissioner's regulations set forth a mandatory five-step sequential evaluation process ("SEP") for assessing disability claims. *See* 20 C.F.R. § 404.1520 (2005). In steps 1-3, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether she has a medically determinable impairment that is "severe" under the Act, and whether plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, App.1. *Id*. At step four of the process, the ALJ must address three phases in making a determination. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). The first

phase requires an evaluation of the claimant's residual functional capacity. *Id.* at 1023. The second phase entails an examination of the demands of the claimant's past relevant work. *Id*. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. Specific findings are required at all phases. *Id*.

Here, the ALJ determined that plaintiff suffered from severe impairments of scoliosis, degenerative disc disease, status post right knee surgery and carpal tunnel syndrome. (Tr. at 20). However, he found that plaintiff did not have an impairment or combination of impairments that met or equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. (Tr. at 20). The ALJ concluded that plaintiff could perform a restricted range of light work, but could not climb ladders, ropes or scaffolds. (Tr. at 21). He also found plaintiff could perform occasional over-the-head reaching but should avoid concentrated exposure to cold, vibration and fumes. (Tr. at 21). After finding plaintiff could not perform her past relevant work, (Tr. at 23), the ALJ determined she could perform work as an office helper, sub assembler of electronic equipment, document preparer or administrative assistant, relying on vocational expert testimony. (Tr. at 24).

In claiming that the ALJ's decision is not supported by substantial evidence in the record, plaintiff first argues that the ALJ improperly failed to find that her migraine headaches were a severe impairment. Plaintiff alleges she became disabled beginning May 15, 2003 (Tr. at 105). The record reflects Dr. Piazza provided plaintiff with medication for migraine headaches from March 2003 (Tr. at 266), but notwithstanding plaintiff's assertion that she continued with treatment for migraine headaches, there is scant support for it. After she discontinued treatment with Dr.

Piazza, plaintiff saw Dr. Albarracin on seven occasions, but on only one occasion was migraine headache diagnosed as causing her pain. (Tr. at 325 and 319-25).

Plaintiff testified she has migraines once or twice a week (Tr. at 38), that she took pain medication which helped her pain (Tr. at 20), and those medications did not result in any side effects (Tr. at 20 and 435). However, she did not take any medication specifically for her migraine headaches, and there was no evidence that she had recent emergency room visits for headaches. (Tr. at 20 and 472).

The ALJ also had concerns regarding plaintiff's credibility, which he properly took into account in determining whether she was disabled. (Tr. at 22). Observing plaintiff during the hearing, he noted she "appeared to be exaggerating," contrasting her use of a brace and walker at the hearing with her not using either when having an examination in January 2005 and an evaluation in August 2006. While she made some explanation for the non-use of the brace at the time of the examination, she had none for the evaluation.

The ALJ properly considered plaintiff's credibility according to the regulations, *See* 20 C.F.R. § 416.929, and determined that her subjective allegations were not entirely credible. "[T]he ALJ must decide whether a claimant's subjective claims of pain are credible, considering such factors as a 'claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor . . ., the claimant's activities, and the dosage, effectiveness, and side effects of medication.'". *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (quoting *Luna v. Bowen*, 843 F.2d 161, 165-66 (10th Cir. 1987)).

Finally, the court also notes the ALJ's mention of plantiff's failure to follow treatment recommendations for physical therapy. The court finds the record properly and amply supports the ALJ declining to find plaintiff's migraine headaches as a severe impairment.

Plaintiff next claims that her RFC was not based on substantial evidence, alleging: 1) the ALJ failed to consider all the plaintiff's impairments when assessing the RFC; and 2) the RFC did not accord with Social Security Rule 96-8p. Plaintiff's RFC is what she can do despite her limitations. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Judge Burbank concluded the plaintiff retained the ability to perform light work (Tr. at 21), citing the medical records to support each limitation. (Tr. at 353-60 and 395-402). The ALJ also specifically referenced Dr. Albarracin's medical records, which discussed the plaintiff's knee surgeries, carpal tunnel syndrome diagnosis and diagnoses of right L5 radiculophathy and neuropathy. (Tr. at 296, 350 and 420). The record reflects that the ALJ knew of and considered all of plaintiff's diagnoses in determining her RFC. The ALJ described plaintiff's RFC in terms of light work, but provided specific limitations where he determined they were warranted. (Tr. at 21). Where all of the functions that the ALJ specifically addresses in the RFC were those in which he found a limitation, a court can reasonably believe that those functions that he omitted were those that were not limited. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

The plaintiff alleges the ALJ failed to perform a proper analysis, failing to provide a valid reason for discrediting Dr. Albarracin's medical opinion. The ALJ found Dr. Albarracin's opinion was based upon subjective complaints and was not consistent with the opinions of Dr. Burton of the KU Medical Center and Dr. Oomen, a consultative examiner for Disability Determinations. (Tr. at 22).

It is plaintiff's duty to provide evidence to establish a disability. *See* 20 C.F.R. § 416.912(c). The ALJ noted Dr. Burton prescribed a physical therapy program (Tr. at 21 and 570); plaintiff did not participate in physical therapy. Noncompliance with treatment is proper factor in credibility analysis. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Plaintiff testified she had carpal tunnel syndrome in both hands and had difficulty holding on to things. (Tr. at 22, 36-37 and 420-21). She testified she occasionally dropped things, but she had no difficulty buttoning, using zippers or tying things. (Tr. at 37). The record does not indicate that plaintiff received treatment for carpal tunnel syndrome. (Tr. at 36 and 421). Dr. Albarracin completed a medical source statement form on December 4, 2006 (Tr. at 576-77), and he indicated plaintiff had very significant limitations that would preclude full time work activity. (Tr. at 576-77).

While acknowledging Dr. Albarracin's treating relationship with plaintiff for pain management (Tr. at 22), the ALJ found that Dr. Albarracin's opinions were based largely on plaintiff's subjective complaints, which the ALJ found not entirely credible. (Tr. at 22). Plaintiff alleges disabling pain, but she testified the pain medication reduces her pain to a 4-5 on a pain scale with 10 being the worst possible pain. (Tr. at 34). She came to the hearing wearing a back brace, although she reported to professionals that it did not help (Tr. at 34 and 569). She also used a walker at the hearing, and testified she uses a walker everyday. (Tr. at 34). However, she did not use the walker at a consultative evaluation on January 20, 2005, or during an evaluation at the KU Medical Center on August 3, 2006. (Tr. at 348-51 and 569-70). The record does not establish that a doctor has prescribed a walker since her recovery from knee surgery performed on July 13, 2006. (Tr. at 483). According to Dr. Albarracin's notes, the claimaint reported she had improved quality of life, activities of daily living, and productivity with medication. (Tr. at 429-40). Dr.

Albarracin's records indicate the claimaint reported to medical professionals that she had no side effects from medication. (Tr. at 22, 437, 441 and 573-74).

The ALJ found that Dr. Albarracin's opinions were not supported by the longitudinal record or by his own treatment notes. He also found Dr. Albarracin's opinions were inconsistent with the other examining physicians' findings. (Tr. at 22). On the other hand, Dr. Burton found: 1) plaintiff was well balanced when standing and had excellent range of motion in her back despite her complaints of chronic back pain (Tr. at 22 and 569); 2) plaintiff had 5/5 motor strength in the bilateral lower extremeties (Tr. at 22 and 569); and 3) the plaintiff's sensation and reflexes were symmetrical. (Tr. at 22 and 570). Dr. Oomen's findings were largely consistent with those of Dr. Burton: 1) plaintiff had no difficulty getting on and off the examination table (Tr. at 22 and 350); 2) plaintiff had no difficulty with heel and toe walking (Tr. at 22 and 350); 3) plaintiff did not use an assistive device (Tr. at 22 and 350); 4) plaintiff had no difficulty squatting and arising from a sitting position (Tr. at 22 and 351); and 5) plaintiff displayed a stable gait and station with no obvious scoliosis. (Tr. 22 and 351).

The ALJ reviewed the entire record, concluding that plaintiff's subjective complaints were not completely credible and that Dr. Albarracin's opinion was not entitled to controlling weight. He found that Dr. Burton and Dr. Oomen's reports were more consistent with the record as a whole, noting: 1) an MRI of plaintiff's lumbar spine performed on April 29, 2005, showed only "very early" degenerative disc changes at L4-L5 and L5-S1, but was otherwise negative (Tr. at 333); 2) an MRI of the cervical spine taken on April 29, 2005, was negative (Tr. at 334); and 3) an MRI of the right knee taken on May 16, 2006, was positive for a tear of the posterior horn of each meniscus and a grade 1 sprain of the medical collateral ligament. (Tr. at 445). The record as a whole

contains inconsistent statements regarding plaintiff's ability to perform work-related activities, and the ALJ, consistent with his responsibilities, found the objective evidence did not support the pain level severity that plaintiff alleged. While Dr. Albarracin indicated the plaintiff suffered from significant limitations, the record as a whole does not support that position.

Finally, plaintiff asserts that the ALJ improperly ignored her reports of pain. In *Luna v. Bowen*, 834 F.2d 161(10th Cir. 1987), the Tenth Circuit, stated that in evaluating subjective complaints of pain, a court must weigh the following: 1) whether claimant proves with objective medical evidence an impairment that causes pain; 2) if so, whether a loose nexus exists between the impairment and the subjective complaints of pain; and 3) if so, whether the pain is disabling based upon all objective and subjective evidence. The ALJ must consider fully all evidence relating to the claimant's subjective complaints, including such factors as the claimant's activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; the existence of any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken by the claimant to relieve symptoms; any measures other than medication taken by the claimant to relieve symptoms; and any other factors concerning the functional limitations of the claimant. *See Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (ALJ may consider claimant's daily activities in determining whether he is entitled to disability benefits); *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ may properly consider what attempts plaintiff has made to relieve his pain, including whether he took pain medication, in evaluating his credibility).

The ALJ did not ignore the plaintiff's reports of pain; he did find she was not credible in her characterization of its severity. He specifically noted: 1) she appeared to exaggerate; 2) she

did not attend physical therapy as suggested by Dr. Burton; and 3) she did not receive treatment for carpal tunnel syndrome. (Tr. at 21-22). The ALJ is required to consider the record as a whole; he has done so, and plaintiff has failed to show that the ALJ ignored her reports of pain.

IT IS ACCORDINGLY ORDERED this 18th day of March 2009, that plaintiff's appeal is denied.

s/ J. Thomas Marten<br>
J. THOMAS MARTEN, JUDGE